The Montefiore Hospital Association of Western Pennsylvania, Petitioner *v.* Pennsylvania Public Utility Commission, Respondent. The Peoples Natural Gas Company, Intervenor.

Argued September 10, 1980, before President Judge CRUMLISH and Judges WILKINSON, JR., MENCER, BLATT, CRAIG, MACPHAIL and WILLIAMS, JR. Judge ROGERS did not participate.

*Marcus Aaron, II,* with him *Roderick A. Palmore, Berkman, Ruslander, Pohl, Lieber & Engel,* for petitioner.

*George H. Buchanan,* Assistant Counsel, with him *Shirley Rae Don,* Deputy Chief Counsel, and *George M. Kashi,* Chief Counsel, for respondent.

*Susan J. Garland,* with her *John J. Mullally,* for intervenor.

OPINION BY JUDGE WILKINSON, JR., October 17, 1980:

Petitioner (Montefiore) is a non-profit, university-affiliated teaching hospital providing medical services in the Pittsburgh area. Two of Montefiore's three boilers have dual fired capability. Montefiore currently has an 8,000 gallon on-site fuel oil storage capacity.

By order of August 19, 1975 the respondent Pennsylvania Public Utility Commission (Commission) instituted a rule-making proceeding to establish a statewide gas curtailment program. Notice of such proposal was made on September 6, 1975 at 5 Pa. B. 2325 (1975). Hearings providing an opportunity for gas utilities and customers to comment on the proposed rules were held in December 1975 and January 1976. On July 7, 1976 the Commission adopted regulations

entitled "Mandatory State-Wide End-Use Natural Gas Curtailment Scheme.'"[1] *See* 52 Pa. Code §§69.21-69.27; 6 Pa. B. 2513 (1976).

Pursuant to the Commission's order of July 7, 1976, Equitable Gas Company (Equitable) informed Montefiore by letter dated August 23, 1976 that on or before July 7, 1977 Equitable would file a tariff supplement specifying its criteria for customer gas use curtailment. On March 31, 1977 Equitable issued its Supplement 93 to Tariff Gas—Pa. P.U.C. No. 18, containing rules and regulations concerning customer volumetric limitations and curtailment priorities.

On March 30, 1977 Equitable informed Montefiore that the hospital had been classified by Equitable as 1% Priority One and 99% Priority Six[2] and that with

---

[1] As opposed to an "end product" program, an end use curtailment policy basically requires that gas supply be allocated according to how gas is used rather than by whom it is used.

[2] The gas curtailment regulations provide in pertinent part:

§69.21. Priority of service.

(a) The available gas supplies to the utility should be allocated among its customers in accordance with the priorities of use listed below. Customers in a higher priority will not be curtailed until all customers falling into the lower classifications have been completely curtailed; where only partial curtailment of any one classification is required, implementation should be *pro rata*, that is, weighted in accordance with the base allotments of the customers within that classification. Following are the priority categories listed in descending order:

(1) Residential and firm critical commercial essential human needs.

(2) Firm small commercial requirements, excluding critical essential human needs requirements covered in paragraph (1) of this section, and firm large commercial and industrial requirements for plant protection.

(3) Firm small industrial requirements.

(4) Firm large critical commercial and industrial requirements, excluding firm critical commercial essential human needs requirements covered in paragraph (1) of this section.

respect to its Priority Six status it would be curtailed 100% beginning April 1, 1977 and continuing until further notice. On April 6, 1977 Equitable again notified Montefiore that it must use alternate fuel until further notice. Montefiore was notified by Equitable on July 12, 1977 that it should use fuel oil over the balance of the summer period so as to avoid or minimize overrun penalties. The hospital continued its gas consumption with full knowledge that it was exceeding its allocation. At an evidentiary hearing before an

---

(5) Firm large noncritical commercial and industrial requirements other than requirements for boiler fuel use.

(6) Firm large noncritical commercial and industrial requirements for boiler fuel use.

(7) Contractually interruptible use.

. . . .

69.22 Definitions.

The following words and terms, when used in this chapter shall have the following meanings, unless the context clearly indicates otherwise:

*Alternate fuel capability*—The ability to use an alternate fuel whether or not the facilities for such use have actually been installed. For purposes of this definition, alternate fuel means any fuel other than natural gas, propane, or other gaseous fuel.

*Commercial Use*—Gas usage by customers engaged primarily in the sale of goods or services including, but not limited to, consumption by office buildings, institutions, and governmental agencies. Commercial use shall not include use of gas for manufacturing or electric power generation.

. . . .

*Essential human needs use*—Gas usage by customers for service to any buildings where persons normally dwell including, but not limited to, apartment houses, dormitories, hotels, hospitals, and nursing homes, as well as the use of natural gas by sewage plants.

. . . .

*Noncritical use*—Gas usage where natural gas, propane, or other gaseous fuel is not the only feasible form of energy, that is where the user has alternate fuel capability. (Emphasis in original.)

52 Pa. Code §§69.21, 69.22.

administrative law judge for the Commission, Montefiore's executive director testified that Montefiore could have used oil during the periods of overrun to avoid excess consumption penalties but declined to do so because of the "economic burden".

Pursuant to its curtailment tariff, Equitable assessed against Montefiore excess consumption penalties of $1,652,510 for the April-October 1977 billing period and $976,050 for the November 1977-March 1978 billing period. Montefiore petitioned the Commission for modification of the Commission's regulations or, in the alternative, relief from payment of the overrun penalties and from classification as a 99% Priority Six customer. Montefiore was notified that this would be treated as a petition for exceptions to the tariff.

After a hearing on Montefiore's petition, the administrative law judge issued on May 18, 1978 an Initial Decision recommending denial of the hospital's petition and reduction of the overrun penalties to $446,620. The Commission remanded the matter to the administrative law judge for further consideration of the issues and for the taking of additional testimony. After another hearing, an inspection of the hospital's site, and submissions of proposed findings of fact and conclusions of law from the concerned parties, the administrative law judge filed on May 29, 1979 a second Initial Decision in which it was ordered, subject to Commission approval, that Montefiore be permitted to change gas suppliers, that Montefiore's petition for reclassification be denied, and that penalties be imposed in the amount of $69,872 in cash payable over 48 months.[3]

---

[3] Pursuant to 52 Pa. Code §69.26, Equitable is authorized to distribute collected penalties to its curtailed customers who did not incur overrun penalties. Equitable was not liable to pay any penalties to its suppliers.

At its public meeting held August 30, 1979, the Commission adopted without modification the second Initial Decision of the administrative law judge and on September 12, 1979 entered the appropriate order. In its appeal to this Court, Montefiore argues (1) that the evidence of record establishes the hospital's entitlement to 100% Priority One Classification, (2) that the procedures in the case violate due process, and (3) that the manner in which the Commission reached its final decision constitutes an abuse of discretion.

We have reviewed the record and find substantial evidence supporting the finding of Montefiore's alternative fuel capability and its corresponding Priority Six curtailment classification. We are satisfied that the administrative law judge scrupulously considered and utilized substantial evidence in the record to make his conclusions on the technical and economic feasibility of Montefiore's conversion to alternative fuels. We further conclude that classification of Montefiore as a Priority Six customer was reasonable and made in faithful reference to the elements and definitions provided in 52 Pa. Code §§69.21, 69.22.

Montefiore next presents a three pronged argument that the procedures in the case violated due process. First, it is argued that the Commission's order of July 7, 1976 erroneously did not require that public utilities conduct evidentiary hearings prior to classification of their customers. The Commission's July 7, 1976 order provides that "[a]t any time, natural gas customers shall have the right to make an application to their distributor for a temporary or permanent change of priority classification upon a showing that alternate fuel capability is not feasible." 6 Pa. B. 2513, 2514. The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner. After consideration

of the interests at stake, the operation of the existing procedures, and the functions involved, we conclude that the procedure afforded was constitutionally adequate.

Second, Montefiore argues that the Commission's end use curtailment scheme violates due process in that it provides for the taking of private property without a showing of harm directly caused by the penalized party. The Commission's regulations direct a gas utility to distribute overrun penalties in excess of those paid by the utility to its suppliers among its curtailed customers who did not incur overruns. 52 Pa. Code §69.26(1). This Court recognizes that a customer's failure to curtail its gas usage as directed results in the burden of additional costs being incurred by the remaining customers in the same priority status who did curtail their gas usage and did use alternate fuel. Further, the record in the instant case contains evidence of just such resultant harm.

Third, it is argued that the Commission's orders approve the imposition of excessive, unreasonable and arbitrary overrun penalties. The hospital does concede that the Commission may provide for reasonable penalties "in the proper circumstances" for its regulatory plans. We must address, then, the penalty provisions of 52 Pa. Code §69.25 and the penalty authorized by the Commission's order of September 12, 1979. We consider the regulations' penalty provisions for unauthorized overruns of allocated volumes to be rationally related to the enforcement of the Commission's natural gas curtailment scheme and not arbitrary. Our examination of the final penalty authorized to be imposed upon Montefiore finds it to be a computation of the cost differential between fuel oil and natural gas during the periods of overruns with a deduction for one week's oil usage as an adjustment for the reasonable time Montefiore needed to make the switch

from gas to oil; we consider this penalty not to be inappropriate.

Finally, Montefiore contends that the Commission committed an abuse of discretion in its "rubber stamp approval of the Initial Decision." The hospital argues that the Commission's order of September 12, 1979 does not address Montefiore's exceptions to the administrative law judge's second Initial Decision. Since the hospital did not file its exceptions within 15 days after the second Initial Decision was filed, *see* Section 332(h) of the Public Utility Code, 66 Pa. C. S. §332(h), there was no need for the Commission to address the exceptions. Montefiore also submits that the Commission committed error when it did not grant Montefiore's request for oral argument; our thorough review of the case record both original and reproduced, could find no documentation of any such motion. In any event, this contention is in the same category as the contention that the Commission erred in adopting its order without providing notice to the hospital that it would consider its petitions at the August 30, 1979 public meeting. To satisfy the principles of due process, the Commission "need only provide a due process hearing and review what is presented to it." *Pennsylvania Public Utility Commission v. Laurel Pipe Line Co.*, 29 Pa. Commonwealth Ct. 351, 354, 370 A.2d 1252, 1254 (1977).

Accordingly, we will enter the following

ORDER

AND Now, October 17, 1980, the order of the Pennsylvania Public Utility Commission, at Docket Nos. E-77124006 and E-78124026, dated September 12, 1979, denying forgiveness of excess consumption penalties and ordering the Montefiore Hospital Association of Western Pennsylvania to make payments of $69,872, is affirmed.