Allied Development and Building Corporation, Petitioner v. Pennsylvania Public Utility Commission and Columbia Gas of Pennsylvania, Inc., Respondents.

208

Argued November 18, 1980, before President Judge CRUMLISH and Judges WILKINSON, JR., ROGERS, BLATT, CRAIG, WILLIAMS, JR. and PALLADINO. Judges MENCER and MACPHAIL did not participate.

*Edwin J. Strassburger*, with him *Dennis S. Shilobod, Messer & Shilobod, P.C.*, for petitioner.

*Larry Gesoff,* Assistant Counsel, with him *Shirley Rae Don,* Deputy Chief Counsel, and *Joseph J. Malatesta, Jr.,* Chief Counsel, for respondent, Pennsylvania Public Utility Commission.

*William U. Jacoby,* with him *Thomas E. Morgan,* for respondent, Columbia Gas of Pennsylvania, Inc.

OPINION BY JUDGE WILLIAMS, JR., June 29, 1981:

Because of severe shortages of natural gas in the early seventies, the Pennsylvania Utility Commission (PUC) issued an Order on February 1, 1972, directing the gas utilities under its jurisdiction to submit to it procedures for the curtailment of gas service, as part of the utilities' tariffs. Columbia Gas of Pennsylvania, Inc. (Columbia) complied on August 8, 1975, by filing a proposed tariff supplement with an effective date of November 1, 1975. Under this tariff Columbia allocated natural gas to certain of its larger users relative to their consumption during previous years; penalty provisions for allocation overruns were included in the tariff terms. Columbia informed its customers of the tariff and of their respective allocations. Appellant herein, Allied Development and Building Corporation (Allied) was notified by letter of August 11, 1975.

When Allied exceeded its authorized usage in the winter of 1975-1976, Columbia imposed a $21,736 penalty upon Allied, in accordance with the approved tariff provisions. Allied then filed a formal complaint with the PUC, alleging that the penalty was unjust, discriminatory, and unreasonable, in that (1) the allocation was unreasonably low, (2) the PUC did not have the power to permit a utility to impose a penalty on a user at that time, and (3) the penalty, not being justifiable as a fair return on the fair value of the gas, is not a just and reasonable rate, and is therefore con-

trary to the Public Utility Code (Code), 66 Pa. C. S. §101 *et seq.*

The Administrative Law Judge (ALJ) dismissed the case on stipulated facts, directing specific discussion to the three assertions Allied made in support of its complaint. First, in response to the allegation that the base volume allocation was unreasonably low because the pertinent building was not fully occupied during the period upon which the allocation was based, the ALJ quoted from a previous PUC decision,[1] in which the PUC had denied such relief. He noted that the overrun was due to a voluntary business decision, rather than a unique or unusual circumstance beyond the control of the user which might justify an exception.

Second, in discussing the averment that the imposition of penalties for the use of gas that was actually available for sale would be inequitable, the ALJ again referred to precedent in refusing to grant relief. He noted again that previous decisions that permitted penalty remission for overuse depended upon attendant special circumstances not present in this case, not the availability of gas. Further buttressing his argument was a discussion of the underlying purpose of the curtailment policy—to alleviate the threat of a shortage and to promote energy conservation. This policy would be rendered nugatory by the broad grant of exemptions.

Third, in reference to the contention that the PUC had no authority under the Code to permit Columbia to impose penalties, the ALJ concluded that the term "penalty", as here used, is not within the ambit of Article XIII,[2] but is rather a monetary assessment by

---

[1] *Petition of Somerset Milling Company,* PUC Decision E-78124015 (Order entered August 17, 1978).

[2] 66 Pa. C. S. §§1301-1314, Rates and Rate Making.

which the PUC can control the consumption of the gas to assure continued usage and availability to the public. As such, he maintained, the penalty is implicitly included in the broad powers which the legislature gave the PUC to carry out the provisions of the Code.

Allied filed exceptions to this decision. However, the PUC adopted the Initial Decision of the ALJ as its own on January 23, 1980, thereby dismissing Allied's complaint. Allied appealed that determination to this Court, raising as issues the three questions presented to the ALJ, and a fourth: whether the PUC/ALJ accurately applied existing law when it alleged that the Commonwealth Court had previously ruled that the PUC had gas curtailment powers at the time of the incident. This issue, having been addressed in the exceptions to the decision of the ALJ, was properly preserved for appeal.

Our scope of review in PUC cases encompasses a determination of whether appellant's constitutional rights have been violated, whether the PUC committed an error of law, and/or whether the order and its complementing findings and conclusions are supported by substantial evidence. *United States Steel Corporation v. Pennsylvania Public Utility Commission*, 37 Pa. Commonwealth Ct. 195, 390 A.2d 849 (1978). Since this case was decided on facts stipulated by the parties, and since appellant does not allege any violation of its constitutional rights, we need only examine the PUC's application of relevant law in our review of the case.

## I

66 Pa. C. S. §1501 now reads, in pertinent part: The Commission shall have sole and exclusive jurisdiction to promulgate rules and regulations for the allocation of natural or artificial gas supply by a public utility.

Allied contends that the authority addressed therein did not vest in the PUC until the effective date of that amendment to the Code, October 7, 1976. It submits that until that date the PUC did not have the power under its enabling legislation to allow utilities to either curtail gas supplies or to impose penalties for alleged overruns.

The PUC submits that the combination of powers and authority granted by Sections 901,[3] 902,[4] and 401[5] of the Code—the powers to supervise and regulate all utilities within the Commonwealth, to enforce, execute, and carry out its rules and regulations, and to perform the attendant watch over the furnishing and maintenance of adequate service by the utilities—encompass the authority to penalize, or to permit the penalization, of those who would obstruct such service. The basis for this contention is that the power to curtail a finite natural resource is essential to the adequate, safe, reasonable and efficient delivery of that resource to the public, and that without the power to penalize, the power to curtail is nugatory.

This Court finds merit in that argument. Furthermore, we note that an amendment giving "sole and exclusive jurisdiction" over a function to an administrative agency, does not preclude a logical interpretation of the statute as allowing concurrent jurisdiction prior to the amendment; *i.e.*, before the language here at issue was added to Section 401, 66 Pa. C. S. §1501, both the utilities and the PUC could allocate,[6] but by the amendment, that authority was limited to

---

[3] 66 Pa. C. S. §501(b).

[4] 66 Pa. C. S. §501(a).

[5] 66 Pa. C. S. §1501.

[6] Section 401, 66 Pa. C. S. §1501, reads and read, in pertinent part: "every public utility may have reasonable rules and regulations governing the conditions under which it shall be required to render service."

the PUC to ensure uniform statewide standards for allocation.

We therefore hold that the allocation and curtailment of gas usage, and the accompanying penalty provisions for overruns, were within the authority vested in the PUC under the provisions of the Code in effect during the winter of 1975-1976.

## II

Appellant next contends that the amount of gas allotted to it was unreasonably low, in that its building was not fully occupied until sometime during 1974; it should therefore receive a retroactive adjustment of its allocation. It bases this argument on several PUC decisions, since this Court has not previously addressed this issue.

The order of the PUC, in response to which the instant tariff supplement was filed, directed the "curtailment" of gas service, to attempt to ward off the threatened critical shortage. Columbia "curtailed" Allied's supply in a minimally offensive manner; it limited the 1975-1976 quota to that which equalled the highest usage during the preceding three years, thus attempting to take into account fluctuations in business development.

While this Court would certainly not wish to discourage the growth and development of business, we bow to the realization that such growth cannot squander finite natural resources. In this situation as in many others with which the courts must deal, there is a necessary balancing of the benefits and detriments of the regulatory scheme to the individual and to the public.

Allied made a business decision in the face of allocations, of which it was aware, which would increase the amount of fuel it would require. It did not request a re-evaluation of its position at the time it made that

decision. Rather, it waited until the penalty was assessed to object.

Also available to Allied was a "one-time donor" program, under which a curtailed customer who was using an alternative fuel could release its unused entitlement to a customer who was experiencing an overrun. Although Allied had been provided with contacts who would be willing to participate as donors, it did not make any such arrangement.[7]

As the ALJ noted in his Initial Decision in this case:

> The acceptance of (more business), with the resultant increase in gas consumption was, therefore, a result of a business decision by the company and not the result of any unique or unusual circumstance which would warrant an exception. Since the company chose to operate in a manner which caused this overrun, it should be required to pay the requisite penalties.

Initial Decision, pages 9-10, citing *Petition of Somerset Milling Company, supra.*

## III

The final[8] question which Allied raises is whether it would be unfair, unjust, unreasonable, and discriminatory to permit the utility to impose the instant penalty, since the gas which Allied is being penalized for using was actually available for sale to others at

---

[7] Stipulation #35.

[8] Also addressed by Allied in this appeal is the question of whether *United States Steel Corporation v. Pennsylvania Public Utility Commission*, 37 Pa. Commonwealth Ct. 195, 390 A.2d 849 (1978) was accurately cited by the ALJ. He cited that case to substantiate the statement that the authority of the PUC to allocate natural gas supplies "was clearly a pre-existing authority" over such allocations. We agree with Allied that the reasoning in that case was mis-applied to the instant facts, however, that mis-application has no effect on the outcome of this case.

non-penalty rates. The Court finds no basis in the record for the latter allegation. In support of same, Allied points to customer service tables and to the previously discussed "donor" program, both of which are grossly distorted in interpretation.

The Court finds no discrimination in the equal application of the allocation formula. The fact that other users had gas available because of decreased needs or use of alternative fuels does not force a conclusion that the allotments were unjust or unfair. Far more unreasonable and in complete derogation of the purpose of the allocation program, would be an unequal distribution of gas, according to customer usage.[9]

The Court further finds no unfairness in the equitable distribution of net penalty moneys as a return to those customers subject to the penalty provision of the tariff.

As this Court noted in *Montefiore Hospital Association v. Pennsylvania Public Utility Commission*, 54 Pa. Commonwealth Ct. 279, 285, 421 A.2d 481, 484-85 (1980), in reference to similar penalty provisions of the regulations which were subsequently promulgated in response to the gas crisis:

> The Commission's regulations direct a gas utility to distribute overrun penalties in excess of those paid by the utility to its suppliers among its curtailed customers who did not incur overruns . . . This Court recognizes that a customer's failure to curtail its gas usage as directed results in the burden of additional costs being incurred by the remaining customers in the same priority status who did curtail their gas usage and did use alternative fuel.

---

[9] Distribution according to customer usage is the normal procedure, the problems of which this allocation program was designed to alleviate.

. . . We consider the regulations' penalty provisions for unauthorized overruns of allocated volumes to be rationally related to the enforcement of the Commission's natural gas curtailment scheme and not arbitrary.

In sum, our examination of the applicable law indicates that the PUC did not commit error in adopting the Initial Decision of the ALJ as its own.

### ORDER

AND Now, this 29th day of June, 1981, the order of the Pennsylvania Public Utility Commission, entered January 23, 1980 to its Docket No. C-21652, is hereby affirmed.

Judge WILKINSON, JR. did not participate in the decision in this case.

Judge MENCER did not participate in the decision in this case.