Pennsylvania Builders Association and Richard W. Richards, Petitioners v. Pennsylvania Public Utility Commission, Respondent.

Pennsylvania Power and Light Company (PP&L) et al., Intervenors.

Argued April 7, 1981, before President Judge CRUMLISH and Judges MENCER, ROGERS, CRAIG and PALLADINO. Judges BLATT, WILLIAMS, JR. and MAC-PHAIL did not participate.

Loudon L. Campbell, with him J. Scott Calkins, for petitioners.

Daniel P. Delaney, Assistant Counsel, with him Joseph J. Malatesta, Jr., Chief Counsel, for respondent.

Gennaro D. Caliendo, with him David J. Dulick, for intervenor, Pennsylvania Power & Light Company.

Walter W. Cohen, Consumer Advocate, with him Martha Bush, Assistant Consumer Advocate, Philip McClelland, Assistant Consumer Advocate, and Andrew Hermann, Legal Assistant, for intervenor, Consumer Advocate.

Timothy F. Nicholson, for Amicus Curiae, Pennsylvania Gas Association.

Ronald Ziegler, Tubis, Schwartz & Ziegler, for Amicus Curiae, Pennsylvania Petroleum Association.

OPINION BY PRESIDENT JUDGE CRUMLISH, July 9, 1981:

The Pennsylvania Builders Association appeals a Pennsylvania Public Utility Commission order approving a tariff supplement filed by the Pennsylvania Power and Light Company (PP&L).[1] We reverse.

On April 6, 1978, PP&L filed a proposed tariff supplement, the effect of which was to establish mandatory building insulation standards as a pre-condition to the Utility's providing electrical service to newly constructed buildings.[2] The tariff supplement would

---

[1] Other interested parties to this litigation include the Pennsylvania Petroleum Association and the Pennsylvania Gas Association as intervenors on behalf of the Building Association and Pennsylvania Power and Light Company and the Office of the Consumer Advocate as intervenors on behalf of the Public Utility Commission.

[2] Other Aspects of the Tariff Supplement, including a prohibition of master metering for new service locations and a removal of limitations in "total electric" rate schedules, are presently the subject of litigation in separate proceedings before this Court.

impose specific insulation standards on all new buildings regardless of what energy source was being used for heating and/or cooling purposes.

The Association in its initial brief asserted that the Public Utility Code[3] did not authorize an electric utility to require specified insulation levels for new buildings being heated and/or cooled by energy sources other than electricity. However, subsequent to the filing of briefs on the issue of the Commission's authority to act in this regard, the General Assembly enacted the Building Energy Conservation Act (Act).[4] By supplemental briefs and oral argument, the Association now asserts that whatever authority the Commission may have had is now subject to the provisions of the Building Energy Conservation Act. We agree.

The Building Energy Conservation Act is a legislative response to the energy crisis which faces this Commonwealth. The Legislature has recognized that construction of energy efficient buildings is one substantial way to conserve dwindling energy resources. The Act's explicit purpose grants the Commonwealth direct authority over building construction to assure that structures are built in such a manner as to exact energy conservation.[5]

Cognizant that proper utilization of insulation materials will achieve energy efficiency, the Legislature has called for uniform insulation standards in all structures built after July 1, 1981. The standards contained in Section 240 of the Act, 35 P.S. §7201.240, require that one or two family residential buildings shall be constructed utilizing the following "minimum insulation standards:" ceilings at R-19, exterior walls at R-13, floors over unheated basements and crawl spaces

---

[3] 66 Pa. C. S. §101.

[4] Act of December 15, 1980, P.L. 1203, 35 P.S. §7201.101.

[5] 35 P.S. §7201.102.

at R-11.[6] On the other hand, PP&L's proposed minimum insulation standards for similar residential buildings are greater. The standards as provided in Rule 2H of the Supplemental Tariff are: ceilings at R-30, exterior walls at R-16, floors over unheated basements and crawl spaces at R-19.

In support of its approval and adoption of the Supplemental Tariff, the Commission argues that the Legislature's use of the words "minimum insulation standards" in Section 240 of the Act is merely directory and does not preclude a Commonwealth agency or commission from requiring greater insulation values. We disagree.[7]

Section 302 of the Act clearly expresses the Legislature's intent to set uniform energy conservation standards:

> The energy conservation standards contained herein or as promulgated by the department with the approval of the Building Energy Conservation Committee shall apply to new buildings or to renovations on which actual construction and/or design has not commenced prior to their effective dates. Except for the authority of the Department of Community Affairs to promulgate rules or regulations for all units subject to the Act of May 11, 1972 (P.L. 286, No. 70), known as the 'Industrialized Housing Act,' provided such standards invoked are equal to or more stringent than those contained in this act, or as mandated by Federal Law, *no department, board, agency or commission other*

---

[6] The Act classifies building types into "Use Groups." For example, an R-3 structure is a one or two family dwelling. The (R) value is the measure of the insulation's ability to retard the flow of heat. *See P.S.* §7201.204.

[7] We are careful to note that the Legislature did specify that the Department of Community Affairs is empowered to evoke greater insultation standards. *See* Section 302 of the Act.

*than as provided herein, shall promulgate or adopt any rules or regulations which are inconsistent with the standards contained in Chapter 2,* Subchapters D through J or promulgated under Chapter 4 of this Act except as mandated by Federal law. (Emphasis added.)

35 P.S. §7201.302.

In this period of our history, where energy has become the most treasured of our natural resources, our Legislature has enacted a comprehensive statutory plan to foster energy conservation in the construction and maintenance of commercial and residential buildings. Although the Commission has admirably taken similar steps to achieve this same result, the Legislature has clearly decided that a singular regulatory scheme would best facilitate conservation. In passing a comprehensive conservation statute the Legislature has ensured that the Commonwealth's building industry will be on notice as to what specifications must be met in the design and construction of buildings. Consequently, we must find that the Commission is precluded from approving Rule 2H of PP&L's Supplemental Tariff, as the insulation standards therein are inconsistent with Section 240 of the Building Energy Conservation Act.[8]

Reversed.

### ORDER

The order of the Pennsylvania Public Utility Commission dated March 28, 1980, Commission Docket No. R-78040578, is reversed.

Date: July 9, 1981

---

[8] Lastly, we dismiss the Association's argument that the Building Energy Conservation Act repeals by implication any jurisdictional authority which the Commission may have had in ordering insulation standards as a prerequisite for service. Clearly, Section 302 of the Act permits the Commission to order insulation standards so long as they are consistent with Chapter 2 of the Act.

Judge MENCER did not participate in the decision in this case.

### AMENDED ORDER

The Order of this Court dated July 9, 1981, is amended to read as follows:

The order of the Pennsylvania Public Utility Commission entered March 28, 1980, Commission Docket No. R-78040578, is reversed insofar as it ordered the establishment of mandatory minimum insulation standards which exceed the requirements mandated by the Building Energy Conservation Act.

Date: September 15, 1981