464 A.2d 321

PENNSYLVANIA BUILDERS ASSOCIATION and Richard W. Richards, Appellees, (Petitioner below)

v.

PENNSYLVANIA PUBLIC UTILITY COMMISSION, Appellant, (Respondent below)

Pennsylvania Power & Light Company, (Intervenor below).

PENNSYLVANIA BUILDERS and Richard W. Richards, Appellees (Petitioner below),

v.

OFFICE OF CONSUMER ADVOCATE OF the COMMONWEALTH OF PENNSYLVANIA, Appellant (Intervenor below)

Pennsylvania Power & Light Company, Intervenor (Intervenor below).

Supreme Court of Pennsylvania.

Argued May 25, 1983.

Decided July 8, 1983.

As Modified on Denial of Reargument Aug. 12, 1983.

Daniel P. Delaney, Joseph J. Malatesta, Jr.; Martha W. Bush, Philip McClelland, Asst. Consumer Advocates, Harrisburg, Pa., for appellant.

G.D. Caliendo, David J. Dulick, Allentown, Pa., for appellee Pennsylvania Power & Light.

J. Scott Calkins, Loudon L. Campbell, Harrisburg, for appellee Pennsylvania Builders Ass'n.

Before ROBERTS, C.J., and LARSEN, FLAHERTY, McDERMOTT and ZAPPALA, JJ.

## OPINION

McDERMOTT, Justice:

This case presents the consolidated appeals of the Pennsylvania Public Utility Commission (Commission), the Office of Consumer Advocate, and the Pennsylvania Power and Light

Company (PP & L).[1]  These parties appeal the order of the Commonwealth Court reversing a Commission order approving a tariff supplement filed by PP & L.

On April 6, 1978, PP & L filed a proposed tariff supplement which, among others, contained a provision (Rule 2–H) establishing mandatory building insulation standards for newly constructed buildings as a pre-condition to the provision of electrical service.  The tariff would apply the insulation standards to all new buildings regardless of whether heated or cooled by electrical energy sources.  After hearings before an Administrative Law Judge, the tariff was approved with the modification that said standards did not apply to new buildings with heating and cooling systems powered by non-electrical energy sources.  The Commission issued an order approving the tariff and reinstating the requirements as applying to all buildings regardless of energy source.  The tariff supplement was given an effective date of May 21, 1980, with the exception that Rule 2–H, the subject of this appeal, had an effective date of April 1, 1981.

■  On April 23, 1980, appellees Pennsylvania Builders Association (Association) and Richard W. Richards filed a petition for review in the Commonwealth Court, challenging the Commission's approval of Rule 2–H.  Appellees challenged the Commission's authority to require such standards for buildings with energy sources other than electricity.  Subsequent to the filing of briefs, the General Assembly enacted the Building Energy Conservation Act (Conservation Act),[2] signed into law December 15, 1980, and with an effective date of January 1, 1981.  In the Conservation Act, the Legislature established a set of mandatory minimum insulation standards, which standards were generally less stringent than those required by the PP & L tariff.  Both sides filed supplemental briefs and had oral argument before the Commonwealth Court *en banc.*  That court, in its opin-

1.  The decision of the Commonwealth Court is reported as *Pennsylvania Builders Assoc. v. Pennsylvania Public Utility Com.,* 60 Pa. Cmwlth 438, 431 A.2d 1157 (1981).

2.  Act of December 15, 1980, P.L. 1203, 35 P.S. § 7201.101 *et seq.*

ion and order of July 9, 1981, and amended order of September 15, 1981, reversed the order of the Commission. The court held that the Legislature had passed a singular, comprehensive scheme to facilitate energy conservation, and that Section 302 of the Conservation Act thus prohibited the Commission from approving mandatory minimum insulation standards greater than those established by the Legislature. We disagree. It is evident from the expressed purposes of the Conservation Act and from the particular language of Section 302 that the Legislature did not intend to prohibit the promulgation of standards which meet or exceed the minimum standards of the Conservation Act. Accordingly, we reverse.

The question for our decision concerns whether the Legislature intended for its statutory scheme to comprise the exclusive set of standards governing insulation and energy conservation. We must conclude that it did not. In Section 102 of the Act, Legislative findings and declaration of purpose, the Legislature stated the following:

§ 7201.102 Legislative findings and declaration of purpose

(a) Findings. The Legislature hereby determines that:

(1) Energy shortages in the domestic supply present far-reaching problems that promise to persist. These energy shortages affect the continued efficient operation of the Commonwealth's economy and social structure.

(2) It is the Commonwealth's responsibility to provide for energy conservation through regulation of design and construction standards.

(3) The Legislature intends, by this act, to respond to these shortages by devising a specific responsible energy conservation policy for building systems.

(b) Purpose. The purpose of this act is to grant to the Commonwealth of Pennsylvania and direct it to exercise specific authority in building construction to assure that such construction is performed using materials and techniques that will provide for energy conservation in the future operation and maintenance of said buildings.

It is abundantly clear that the Legislature, while wishing to establish at least a certain minimum level of conservation standards, had no intention of limiting energy conservation efforts to those minimum levels. Indeed, the opposite appears to be true, upon examining the particular provisions of Section 302.

Section 302 prohibits the promulgation of any rules or regulations which are inconsistent with those of the Conservation Act. This Section reads as follows:

The energy conservation standards contained therein or as promulgated by the department with the approval of the Building Energy Conservation Committee shall apply to new buildings or to renovations on which actual construction and/or design has not commenced prior to their effective dates. Except for the authority of the Department of Community Affairs to promulgate rules or regulations for all units subject to the Act of May 11, 1972 (P.L. 286, No. 70), known as the "Industrialized Housing Act," provided such standards invoked are equal to or more stringent than those contained in this act, or as mandated by Federal Law, no department, board, agency or commission other than as provided herein, shall promulgate or adopt any rules or regulations which are inconsistent with the standards contained in Chapter 2, Subchapters D through J or promulgated under Chapter 4 of this Act except as mandated by Federal Law.

35 P.S. § 7201.302

The clear import of this section is to prohibit the imposition of standards which would conflict with, or undercut those legislatively mandated. Had the intent of the Legislature been to forbid the passage of *any* other standards, such a prohibition would have been plainly and simply stated. By disallowing only *inconsistent* standards, however, it is clear that the Legislature intended to forbid only those standards less stringent than those it enacted. Moreover, the legislative choice of the term *minimum* insulation standards sup-

ports the conclusion that standards equal to or more stringent than those of the Conservation Act are permissible.[3]

Since the standards of Rule 2–H, approved by the Commission, are more stringent than those required under the Conservation Act, we conclude that the Commonwealth Court erred in finding those standards in contravention of the Conservation Act. Both the entire purpose of that Act, and the particular provisions with which we are concerned, have energy conservation as their sole and stated purpose. To strike standards which are entirely promotive of that purpose, on that ground that they do their job too well, is not consistent with the expressed legislative intention.

Accordingly, we vacate the order of the Commonwealth Court and remand for proceedings consistent with this opinion.

NIX and HUTCHINSON, JJ., did not participate in the consideration or decision of this case.

LARSEN, J., dissents.

**3.** Section 240 of the Conservation Act, then in effect, provided that the insulation standards so required were *"minimum insulation standards."* 35 P.S. 7201.240.