Pennsylvania Builders Association and Richard W. Richards, Petitioner *v.* Pennsylvania Public Utility Commission, Respondent. Office of Consumer Advocate et al., Intervenors.

Argued September 10, 1984, before Judges ROGERS, CRAIG and MACPHAIL, sitting as a panel of three.

*Loudon L. Campbell,* with him, *J. Scott Calkins, Calkins & Campbell,* for petitioners.

*Daniel P. Delaney,* Deputy Chief Counsel, with him, *Frank B. Wilmarth,* Associate Counsel, and *Charles F. Hoffman,* Chief Counsel, for respondent.

*David J. Dulick,* with him, *Bridget E. Grady,* for intervenor, Pennsylvania Power & Light Company.

*David Barasch,* Acting Consumer Advocate, with him, *Philip McClelland,* Assistant Consumer Advocate, for intervenor, Consumer Advocate.

OPINION BY JUDGE CRAIG, October 29, 1984:

The Pennsylvania Builders Association (PBA) appeals an order of the Pennsylvania Public Utility Commission (PUC), approving a supplement to a tariff rule filed by the Pennsylvania Power and Light Company (PP&L), which requires that building construction meet specified minimum insulation standards as a condition for receiving electric service.

Our scope of review is limited to determinations as to violations of constitutional rights, errors of law and whether findings are supported by substantial evidence. *Allied Development and Building Corp. v. Pennsylvania Public Utility Commission,* 60 Pa. Commonwealth Ct. 207, 430 A.2d 1239 (1981).

Because our Supreme Court has held that the PUC does have *jurisdiction* to approve the tariff,[1] we must determine, on remand, whether the PUC has the au-

_____

[1] Tariff 2H, as submitted by PP&L and approved by the PUC requires, at 2H(2), that the contractor, engineer or architect issue a statement of conformance to the "effective insulation requirements" which may be verified by PP&L prior to acceptance for electrical service. The tariff covers new residential buildings, new commercial buildings, additions to existing buildings, conversion of build-

*thority* to approve it. Inherent in this case is the question of whether the PUC may approve such tariff when it applies to buildings that are neither heated nor cooled by electricity as the primary energy source. Because we conclude that the PUC may approve the tariff, we affirm.

The Building Energy Conservation Act, Act of December 15, 1980, P.L. 1203, 35 P.S. §§7201.101-7201.602 (Conservation Act), enacted after the Public Utility Code, Act of July 1, 1978, P.L. 598, *as amended,* 66 Pa. C. S. §§101-3315, directs the Commonwealth to "exercise specific authority in building construction to assure that . . . construction is performed using materials and techniques that will provide for energy conservation in the future operation and maintenance of said buildings." 35 P.S. §7201.102(b).

The PUC is charged with ensuring that every utility furnishes adequate, safe and reasonable service.[2] Further, the PUC may prescribe standards for conditions relating to the supply of the service.[3] These standards, when approved by the PUC, need not originate with the PUC.

As we have recently observed, the PUC has broad authority to supervise and regulate all utilities within the Commonwealth. *Crown American Corporation v. Pennsylvania Public Utility Commission,* 76 Pa. Commonwealth Ct. 305, 309, 463 A.2d 1257, 1259 (1983). In the earlier stage of this case, *Pennsylvania Builders Association v. Pennsylvania Public Utility Commis-*

---

ings to electric heat, and mobile homes. Additionally, the tariff is flexible in that it allows an increase or a decrease in a specific insulation assembly (wall, ceiling or floor), so long as the building still meets the overall heat loss requirements.

[2] Public Utility Code, Act of July 1, 1978, P.L. 598, 66 Pa. C. S. §1501.

[3] 66 Pa. C. S. §1504.

*sion,* 502 Pa. 87, 464 A.2d 321 (1983),[4] our Supreme Court concluded that the Legislature intended that the Conservation Act not limit energy conservation to a certain statutory minimum level. The court stated that the legislature intended only to forbid other standards less stringent than those enacted:

> Both the entire purpose of that Act, and the particular provisions with which we are concerned, have energy conservation as their sole and stated purpose. To strike standards which are entirely promotive of that purpose, on that ground that they do their job too well, is not consistent with the expressed legislative intention.

*Id.* at 92, 464 A.2d at 323.

A regulatory agency may have implied powers, with respect to matters not specifically stated in the enabling statute, if they are within the legislative intent. *Western Pennsylvania Water Company v. Pennsylvania Public Utility Commission,* 10 Pa. Commonwealth Ct. 533, 538, 311 A.2d 370, 373 (1973).

The PUC decision contains findings to the effect that: (1) energy conservation involves all forms of non-renewable energy sources, (2) there is a sufficient connection between electrical energy conservation and the insulation of non-electrically heated and/or centrally air conditioned buildings to justify the adoption of insulating standards as a precondition for new electrical service connections, and (3) therefore increased insulation will result in significant energy savings which will be cost-effective regardless of the fuel used for heating, producing system-wide benefits.

---

4 This decision vacated this court's order in *Pennsylvania Builders Association v. Pennsylvania Public Utility Commission,* 60 Pa. Commonwealth Ct. 438, 432 A.2d 1157 (1981), and remanded the case to this court.

Our examination of the record shows adequate substantial evidence to support these findings. The testimony of Mr. Nonemaker of PP&L—regarding the savings of energy resources required to produce electricity, deferral of power plant construction and financing costs, reduction in additional environmental impact, and delay of additional rate increases—provides adequate reasons to support the tariff.

Mr. McNair, also of PP&L, gave definite testimony that minimum levels of insulation can be implemented immediately using available materials and techniques, that the minimum levels do not represent any significant change in lifestyle and that—once installed—the insulation represents continuing savings on annual energy bills over the life of the building, beyond the savings in the cost of generating electricity. He noted that the proposed insulation levels were supported by the guidelines of both the National Association of Homebuilders and the Farm and Home Administration. Finally, Mr. McNair gave persuasive testimony regarding the desirability of a uniform tariff because of its cost effectiveness for all of the fuels used to heat the home and because of flexibility needed in the event that a future shortage of one of the fuels forces a conversion to electrical heating.

We agree with the PUC that the tariff is reasonable and will encourage economical use of electricity, resulting in a significant saving of electricity system-wide.

Accordingly, we affirm.

ORDER

Now, October 29, 1984, the order of the Pennsylvania Public Utility Commission, entered March 28, 1980, is affirmed.