**UGI UTILITIES, INC.—GAS DIVISION, Petitioner,**

v.

**PENNSYLVANIA PUBLIC UTILITY COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Oct. 16, 1995.
Decided March 14, 1996.

---

David B. MacGregor, for Petitioner.

Zsuzsanna E. Benedek, Assistant Consumer Advocate, for Intervenor, Office of Consumer Advocate.

Kevin J. Moody, Assistant Counsel, for Respondent.

Before DOYLE, SMITH, JJ., and SILVESTRI, Senior Judge.

SMITH, Judge.

UGI Utilities, Inc.—Gas Division (UGI) petitions for review of a final order of the Pennsylvania Public Utility Commission (PUC) that, inter alia, rejected the rates reflected in UGI's PGC (purchased gas cost) 1994 Tariff Addendum. The PUC directed that UGI's firm service customers' purchased gas cost rates be credited with $956,347 of unauthorized overrun revenues collected by UGI from interruptible service customers who, during the cold weather peak periods that occurred during the winter of 1993–1994, took gas service beyond their contract requirements or continued to take service when requested by UGI to interrupt gas usage.

UGI questions whether the PUC's unauthorized overrun revenue adjustment improperly includes non-gas cost items in the calculation of UGI's purchased gas cost rates and thereby violates Section 1307(f) of the Public Utility Code, 66 Pa.C.S. § 1307(f). Additional questions presented by UGI include whether the PUC's unauthorized overrun revenue adjustment constitutes impermissible "line item" or "retroactive" ratemaking and whether the PUC's unauthorized overrun revenue adjustment constitutes an arbitrary and capricious abuse of administrative discretion.

UGI's "core customers" consist of its PGC(1) customers who are served under Rate R (Residential), Rate GS (Gas Light), Rate N (Small Commercial and Industrial), Rate TCS (Temperature Controlled Service) and Rate LF (Load Factor). UGI's core customers are supplied "firm service" where the utility agrees to provide service without any unanticipated interruption. Other classes of customers, such as the transportation class, have "interruptible service," under which the utility has a contractual right to interrupt service during cold weather peak period conditions.

During cold weather conditions in the winter of 1993–1994, several of UGI's interruptible sales and transportation class customers failed to curtail or to interrupt service during periods of peak use as required by UGI's curtailment tariffs.[1] Consequently, UGI not

1. On July 7, 1976, the PUC adopted regulations entitled "Mandatory State–Wide End–Use Natural Gas Curtailment Scheme." These regulations are set forth in 52 Pa.Code §§ 69.21–69.27. In *Montefiore Hospital Ass'n v. Pennsylvania Public Utility Commission*, 54 Pa.Cmwlth. 279, 421 A.2d

only charged these customers for the extra gas used at the highest incremental cost available but in addition collected $956,347 in overrun penalties from them.

On June 1, 1994, UGI filed its annual purchased gas cost filing pursuant to Section 1307(f).[2] The Office of Consumer Advocate (OCA), a participant in the Section 1307(f) proceeding, opposed UGI's failure to include the $956,347 in overrun revenue collected from its overrun customers in its purchased gas costs. On October 3, 1994, an administrative law judge (ALJ) issued a recommended decision that permitted UGI to retain the $956,347 in penalties. The OCA filed exceptions and the PUC reversed the ALJ, directing that UGI's core customers' purchased gas costs be credited with the $956,347 in overrun revenues. The PUC reasoned that because UGI obtained the gas resources necessary to supply its overrun customers using its core customers' purchased gas cost rates and because UGI's core customers bore the risk of interruption of their firm service due to UGI's service of its overrun customers, the core customers were therefore entitled to any benefits to be derived from assuming that risk. UGI seeks review of the PUC's determination to credit UGI's core customers purchased gas cost rates for the $956,357 in overrun revenues.[3] OCA intervenes in opposition to UGI's petition for review.

Before this Court UGI contends that the PUC improperly included non-gas cost items in the calculation of UGI's purchased gas cost rates in violation of Section 1307(f). Specifically, UGI asserts that the overrun revenue cannot be considered a component of purchased gas costs within the meaning of Section 1307(f) because it is a penalty collected from UGI's overrun customers over and above the revenue received from the unauthorized purchase of gas by these customers. UGI argues that it can identify the amount of gas actually purchased by its overrun customers, that it procured sufficient gas resources to accommodate both its overrun and core customers during the peak winter period and that its core customers experienced no interruption of service during this time. UGI thus argues that, because its overrun customers have already been charged for the extra gas usage at UGI's highest rate, the additional overrun revenues are non-gas-cost penalty payments that should have been excluded from the Section 1307(f) calculations.

UGI also cites several decisions where recovery of various non-gas costs or expenses have been disallowed, including *National Fuel Gas Distribution Corp. v. Pennsylvania Public Utility Commission*, 137 Pa.Cmwlth. 621, 587 A.2d 54 (1991) (take-or-pay costs not purchased gas costs under Section 1307(f)); and *Pennsylvania Public Utility Commission v. Peoples Natural Gas Co.*, 57 Pa. P.U.C. 555 (1983) (customer assistance program expenses not purchased gas costs). These cases, however, are readily distinguishable from the present case. In *National Fuel Gas Distribution Corp.*, this Court stated that take-or-pay costs are contract reformation costs and do not relate to the acquisition of gas. Also, in *Columbia Gas of Pennsylvania, Inc. v. Pennsylvania Public Utility Commission*, 149 Pa.Cmwlth. 247,

481 (1980), this Court affirmed the PUC's authority to require curtailment practices. Pursuant to these regulations, UGI is required to establish curtailment procedures and assess overrun penalties.

2. Although a utility's rates are usually set in a base rate proceeding under Section 1308 of the Public Utility Code, 66 Pa.C.S. § 1308, the PUC is permitted, under Section 1307(f), to set rates for large gas utilities such as UGI based upon UGI's purchased gas costs, which are the utilities' largest operating expense. Section 1307(f) permits adjustment of a utility's rates to reflect increases or decreases in gas costs and requires the utility to file annual statements specifying total revenues received and total gas expenses

incurred for the prior 12–month period. Any over or under-collection is corrected by either a refund or charge to customers. *See Pennsylvania Industrial Energy Coalition v. Pennsylvania Public Utility Commission*, 653 A.2d 1336 (Pa. Cmwlth.1995), aff'd, —— Pa. ——, 670 A.2d 1152 (1996).

3. This Court's scope of review is limited to a determination of whether the findings of the PUC are supported by substantial evidence of record, whether an error of law has been committed or whether constitutional rights have been violated. *Columbia Gas of Pennsylvania, Inc. v. Pennsylvania Public Utility Commission*, 149 Pa.Cmwlth. 247, 613 A.2d 74 (1992), aff'd 535 Pa. 517, 636 A.2d 627 (1994).

613 A.2d 74 (1992), *aff'd,* 535 Pa. 517, 636 A.2d 627 (1994), this Court stated that customer assistance program expenses do not relate to the procurement or supply of gas or purchased gas cost resources.

■ The PUC is afforded broad discretion in determining which expenses and revenues are properly entitled to rate treatment as purchased gas costs in a Section 1307(f) proceeding. *Equitable Gas Co. v. Pennsylvania Public Utility Commission,* 113 Pa.Cmwlth. 68, 536 A.2d 846 (1988). Pursuant to Section 1501 of the Public Utility Code, 66 Pa.C.S. § 1501, UGI has a statutory obligation to provide safe, adequate and reliable firm service to its core customers.

■ By permitting its overrun customers, during peak winter demand, to use gas resources procured for UGI's core customers, UGI puts those customers at risk of possible interruption of service in violation of Section 1501. Thus UGI's assertions that it can identify the amount of gas used by its overrun customers and that no interruption of service to its core customers occurred are irrelevant. The gas resources used to supply both the overrun customers and the core customers were procured by UGI using its core customers' purchased gas rates and thus cannot be divided according to which customers actually used it. Further, UGI's core customers bore the risk of any interruption of their service due to the unauthorized gas usage by UGI's overrun customers. For the reason that UGI's overrun revenues are derived from purchased gas cost resources paid for by UGI's core customers, this Court holds that the PUC did not err or abuse its discretion in crediting UGI's core customers' purchased gas rates for the overrun revenues.

■ UGI further contends that the PUC's overrun adjustment constitutes either impermissible "line item" or "retroactive" ratemaking. As noted by OCA, UGI's contention is entirely based on the proposition that overrun revenues are base rate revenues reflected in a Section 1308 base rate proceeding rather than purchased gas costs, which may be reviewed in a Section 1307(f) proceeding. Having determined that in the present case, UGI's overrun revenues are purchased gas costs within the meaning of Section 1307(f), this Court need not address this issue. In short, prohibitions against line item and retroactive ratemaking are inapplicable to Section 1307(f) proceedings.

UGI further contends that the PUC's overrun adjustment constitutes an arbitrary and capricious abuse of administrative discretion for the following reasons: (1) the PUC reduced UGI's rates for revenue increases received during the winter of 1993–1994 while ignoring corresponding cold weather cost increases, in the nature of customer assistance program expenses, during the same period; (2) unlike the overrun revenues, all previous revenue from interruptible customers, including "on-system" sales and "capacity release" revenues, has been excluded from purchased gas costs; and (3) the PUC's order is internally inconsistent because, despite its holding that Section 1307(f) proceedings should deal only with gas cost issues, the PUC reduced UGI's purchased gas cost rates to reflect overrun revenues, a non-gas item.

■ To reiterate, this Court has determined that the PUC did not err or abuse its discretion in including overrun revenue in a purchased gas cost proceeding under Section 1307(f). Moreover, an abuse of discretion only arises where a judgment is manifestly unreasonable or is the result of partiality, prejudice, bias or ill-will, as shown by the record. *Allegheny West Civic Council, Inc. v. City Council of the City of Pittsburgh,* 86 Pa.Cmwlth. 308, 484 A.2d 863 (1984). The PUC's determination in the present case does not meet the standard for an abuse of discretion.

Overrun revenues are derived from UGI's use of purchased gas cost resources paid for by its core customers, and, as previously noted, customer assistance program expenses have been held to be non-gas items properly excluded from Section 1307(f) proceedings. *Columbia Gas of Pennsylvania, Inc.* Furthermore, all previous revenue from overrun or interruptible customers, including "on-system" sales and "capacity releases," are not Section 1307(f) matters because they were designed by UGI, in a Section 1308 base rate proceeding, to flow through UGI's base rates.

Accordingly, the PUC's overrun adjustments were neither arbitrary nor capricious.

UGI next contends that the PUC's "at-risk" rationale provides no support for its decision because there were in fact no service disruptions to the core customers, and the overruns had no effect on the quality or cost of service provided to the core customers. The more UGI's gas resources are used by its overrun customers, the greater the risk that UGI will be unable to meet the needs of its core customers even though no actual interruptions of the core customers' gas supply occurred here. Because UGI's core customers, rather than UGI shareholders, bore the risk of service interruption, this Court agrees with OCA and the PUC that UGI's core customers, rather than its shareholders, should receive the benefit of the overrun revenues. The order of the PUC is affirmed.

DOYLE, Judge, dissenting.

I respectfully dissent and, contrary to the view of the majority (slip op. p. 6), would observe that UGI's overrun revenues and penalties are not derived from purchased gas cost resources paid for by UGI's core customers. Quite to the contrary, those revenues are derived from, and only from, UGI's "overrun customers" in a different service class, who failed to curtail or interrupt their gas service.