536 A.2d 846

Equitable Gas Company, Petitioner *v.* Pennsylvania Public Utility Commission, Respondent.

Argued November 18, 1987, before President Judge
CRUMLISH, JR. and Judges CRAIG, MACPHAIL, DOYLE,
BARRY, COLINS and PALLADINO.

*Charles E. Thomas, Jr.,* with him, *Thomas T.
Niesen, Lawrence B. Nydes* and *Amy M. A. Klodowski,
Thomas & Thomas,* for petitioner.

*John F. Povilaitis,* Deputy Chief Counsel, with him,
*Alphonso Arnold, Jr.,* Assistant Counsel, and *Daniel P.
Delaney,* Chief Counsel, for respondent.

*Philip F. McClelland,* ·Assistant Consumer Advocate, with him, *Robert P. Haynes, III, H. Kay Dailey,* Assistant Consumer Advocates, and *David M. Barasch,* Consumer Advocate, for intervenor, David M. Barasch, Consumer Advocate.

OPINION BY JUDGE PALLADINO, January 26, 1988:

Equitable Gas Company (Equitable or Company), a division of Equitable Resources, Inc., appeals from an order of the Pennsylvania Public Utility Commission (PUC or Commission) which adopted, with modification, the recommended decision of an Administrative Law Judge (ALJ) and ordered Equitable to file for tariffs or tariff supplements which reflect a gas cost rate of $2.9955 per Mcf instead of Equitable's proposed $3.5021 per Mcf rate. We affirm.

On February 28, 1986, Equitable filed with the PUC a Computation of Annual Purchased Gas Adjustment pursuant to Section 1307(f) of the Public Utility Code (Code), 66 Pa. C. S. §1307(f) (Section 1307(f) filing). The Section 1307(f) filing proposed rate increases which reflected: (1) Equitable's projected natural gas costs for the 12-month period ending August 31, 1987; (2) a reconciliation plan for the treatment of gas costs collected during the calendar year 1985; and (3) a proposed depletion adjustment for Commission imputation of gas purchases during 1985 and 1984.[1]

On March 18, 1986, the PUC instituted an investigation to determine the lawfulness, justness and reasonableness of Equitable's Section 1307(f) filing. Part of the PUC investigation was to determine whether, in conformance with Sections 1317 and 1318 of the Code, 66

---

[1] 52 Pa. Code §53.64(h) permits a utility to file for subsequent reconciliation of costs incurred under a prior Section 1307(f) proceeding.

Pa. C. S. §§1317, 1318, Equitable's proposed gas cost rate reflected "a least cost fuel procurement policy, consistent with the utility's obligation to provide safe, adequate and reliable service to its customers."

On March 19, 1986, the Office of Consumer Advocate filed a complaint against Equitable's Section 1307(f) filing which was consolidated with the PUC investigation. Denex Petroleum Corporation and Equitable Industrial Intervenors filed petitions to intervene, which were granted. Hearings were held in April and May of 1986. On August 29, 1986, the PUC entered a final order rejecting Equitable's proposed Section 1307(f) filing and ordering Equitable to adjust its tariffs and tariff supplements to reflect a gas cost rate of $2.9955 per Mcf.

In its order, the PUC concluded that Equitable's policy of pro-rata cutbacks on supplies from separate interstate pipeline natural gas suppliers during the eight month period ending August 31, 1985[2] was unreasonable and inconsistent with the stated requirements of Sections 1317 and 1318 of the Code. In substitution thereof, the PUC ordered a recalculation of Equitable's total gas costs based upon imputed sales from Texas Eastern Transmission Corporation (Texas Eastern), an interstate pipeline supplier, in lieu of actual pipeline purchases from Tennessee Gas Pipeline Company (Tennessee) and Kentucky West Virginia Gas Company (Kentucky West), Equitable's wholly owned subsidiary. The PUC order also rejected Equitable's claimed depletion adjustment, thereby rejecting Equitable's argument that prior gas costs rates (from the previous Sec-

---

[2] Equitable altered its pro-rata policy following issuance of the PUC order in the last Section 1307(f) proceeding where the Commission determined the policy to be unreasonable and in violation of Sections 1317 and 1318 of the Code.

tion 1307(f) proceeding which reflected imputed Company and locally produced gas during 1983 and 1984) must be concomitantly adjusted to reflect the costs of replacing the imputed amounts of subsequent, more expensive rates. In this appeal, Equitable challenges the PUC's conclusions with respect to these latter two elements of the Section 1307(f) filing.

Our scope of review is limited to a determination of whether constitutional rights have been violated, an error of law committed or whether the findings, determinations or order are supported by substantial evidence. *Pennyslvania Power and Light Commission v. Pennsylvania Public Utility Commission,* 101 Pa. Commonwealth Ct. 370, 516 A.2d 426 (1986).

Six months ago, this court reviewed the PUC order addressing Equitable's 1985 Section 1307(f) filing in *Equitable Gas Company v. Pennsylvania Public Utility Commission,* 106 Pa. Commonwealth Ct. 240, 526 A.2d 823 (1987).[3] In that case, the Commission had rejected Equitable's projected supply mix for the twelve month period ending August 31, 1986 which proposed to apply pro-rata cutbacks[4] to the takes from natural gas suppliers.

The Commission found that Equitable was not pursuing a least cost fuel procurement policy consistent with the utility's obligation to provide safe, adequate and reliable service to its customers. Consequently, the PUC substituted its own more economical redistributed supply mix. This court specifically upheld PUC authority to issue such an order and rejected Equitable's con-

---

[3] The present appeal was already pending at the time we filed this opinion.

[4] In response to a natural gas surplus, Equitable pursued a policy of cutting back on the takes from various gas suppliers on a pro-rata basis depending on the percentage of Equitable's total intake that a particular supplier provided.

tention that PUC redistribution of their proposed supply mix illegally intruded upon the utilities' managerial discretion. *Id.* at 253, 526 A.2d at 828-29. In addition, in that case, the PUC also adjusted Equitable's proposed tariffs in order to reflect their imputation of the sale of cheaper locally produced gas in lieu of actual purchases from more expensive interstate pipelines during 1983 and 1984. In affirming the PUC order in this regard, we stated:

> Equitable argues, however, that disallowing historical gas cost was an impermissible intrusion upon the managerial discretion of the utility. While it is true that the PUC's authority to inject itself in the internal management of a public utility is limited, the PUC may regulate utilities where their actions affect the public they serve, and rates that affect the public. . . . If the utility failed to exercise reasonable managerial prudence, at that time, which amounted to an abuse of discretion in incurring costs, the PUC is empowered to intervene. Here, the PUC reviewed the evidence and concluded that the gas costs were excessive and imprudently incurred. That conclusion was based on testimony indicating the known availability of less expensive gas which could have been taken in lieu of more expensive gas from Equitable's affiliate, Kentucky West. These findings are supported by substantial evidence, therefore we will not substitute our judgment for that of the PUC. Recovery of costs found to be the result of managerial imprudence may be properly denied.

*Id.* at 261, 526 A.2d at 831-32 (citation omitted).

In the present appeal, Equitable contends that the PUC abused its discretion in concluding that during the first eight months of 1985 Equitable did not pursue a least cost fuel procurement strategy consistent with its

obligation to provide safe, adequate and reliable service. In support, Equitable asserts that the Commission made illegal use of 20/20 hindsight in reviewing Equitable's decision making process.[5] We disagree.

Equitable's pro-rata cutback policy during the period at issue in this appeal was merely a continuation of the policy rejected by the PUC in Equitable's previous Section 1307(f) filing. In the last appeal, we upheld PUC authority to revise Equitable's proposed supply mix so as to reflect a more economical redistribution plan. We now reiterate our holding in that case that the PUC maintains the authority to deny recovery costs found to be the result of managerial imprudence. Consequently, as long as the PUC's findings are supported by substantial evidence, this court will not overturn a PUC decision to intervene into a Section 1307(f) filing and deny recovery of costs determined to be unreasonably and imprudently incurred.

At the hearings, the PUC trial staff presented Ralph M. Griffin, a PUC rate engineer, as a witness. Griffin testified as follows with regard to Equitable's pro-rata cutback policy:

> During 1985 Equitable purchased 9,028,759 Dth (Dekatherms) from Tennessee . . . , 13,736,865 Dth from Kentucky West . . . , and 25,703,406 Dth from Texas Eastern. . . . Purchases were for the most part pro-rata reductions below minimum bill requirements from each of these pipelines, as in Equitable's last 1307(f) filing. However, considering the large difference in commodity rates between Tennessee, and Texas Eastern, and between Kentucky West

---

[5] Equitable does not challenge the PUC accounting figures. The utility challenges only the Commission's authority to alter Equitable's cost recovery policy.

and Texas Eastern, Equitable would have saved substantial amounts by simply increasing takes from Texas Eastern, while reducing takes from Tennessee and Kentucky West and paying the fixed costs in these reduced amounts. . . . In May, 1985, for example, Tennessee gas was priced at $3.5388 per Dth while Kentucky West gas was priced at $3.6177 per Dth. Texas Eastern gas was only $3.0053 per Dth. Displacement of 706,598 Dth off Tennessee gas and 757,580 Dth of Kentucky West gas with less expensive Texas Eastern volumes results in savings just for the month of May of $341,831. . . . for the year 1985, displacement of Tennessee . . . and Kentucky West volumes . . . would have resulted in savings to rate payers of $2,213,714. Pennsylvania rate payers should not be required to pay for unnecessary volumes of expensive Kentucky West and Tennessee gas which result from Equitable's reluctance to pursue a least cost policy.

Testimony of Ralph M. Griffin at 4-5. Griffin's testimony clearly provides substantial support for the PUC determination to deny asserted recovery costs for reasons of Equitable's failure to conform to the least cost procurement standards of Sections 1317 and 1318 of the Code.

Equitable's second contention centers on the Commission's rejection of asserted depletion adjustment associated with the Commission's imputation of Company and locally produced gas during the years 1983 and 1984. Equitable argues that since a unit of gas purchased from a finite well source cannot be burned twice, that is, once by imputation and once in fact, then any volumes of gas which the Commission imputed as purchased by Equitable during the years 1983 and 1984

from cheaper local sources must be replaced at higher alternative costs. Therefore, Equitable argues, its current proposed tariff must reflect a well depletion adjustment to account for the replacement costs. The fallacy of this argument lies in Equitable's failure to account for the legislative intent to grant the PUC the authority to expand recognition of available gas supplies beyond those sources from which the utility actually makes purchases.

Section 1318 of the Code, 66 Pa. C. S. §1318 (determination of just and reasonable costs) states in pertinent part:

(c) Shut-in gas; special rule.—In determining whether a gas utility has purchased the least costly natural gas available, the commission shall consider *as available to the utility any gas supplies that reasonably could have been brought to market* during the relevant period *but which were voluntarily withheld* from the market by the utility or an affiliate interest of the utility. (Emphasis added.)

In the last Section 1307(f) proceeding, the PUC accepted testimony from witnesses who calculated what volumes of gas Equitable could have obtained from local and company production capacities if utilized, as compared with the volumes which were actually purchased. The resulting differential was accepted by the PUC as being the volume of gas available to the utility but voluntarily withheld from the market. Consequently, the PUC imputed these volume purchases in calculating rate tariffs for Equitable's 1985 Section 1307(f) filing, in lieu of more expensive alternative purchases from Equitable's corporate relative, Kentucky West.

Equitable's "burned twice" argument relies upon the proposition that since the production capacities from which the volumes were imputed to have been drawn

are fixed and finite, the imputed volumes must be replaced by alternative more expensive sources which are currently producing. However, this proposition ignores the previous PUC determination that local capacities were *available but not utilized* and that the purpose of the PUC imputation was to recognize these sources as available within the utility's supply capacities. Thus, the PUC imputed volumes must be replaced from these unutilized but available sources. Accordingly, we agree with the PUC when it states in its opinion:

> [Equitable's] proposed adjustment is an attempt to relitigate an issue resolved in the last 1307(f) proceeding at R-850038. These lower cost company and local production resources are currently available and should be used to meet the Company's sales requirements. The record in this proceeding demonstrates that the production capabilities of gas wells may be jeopardized if they are shut-in. We believe that the risk and cost of shutting-in wells, should be borne by the Company, particularly when these shut-in wells have removed a low cost gas source.

*Pa. Public Utility Commission v. Equitable Gas Co.*, 62 Pa. P.U.C. 65, 81 (1986).

Finally, Equitable argues that it was denied due process of law[6] by the Commission's alleged failure to "establish recognizable, meaningful and consistent standards pursuant to which Equitable can conform its gas purchasing activities confident that if it does so, the Commission will allow Equitable to recover the costs associated therewith."[7] We disagree.

---

[6] Equitable also challenges the PUC authority to subsequently disapprove of a procurement policy which the Commission previously found reasonable and prudent in a prior proposed gas cost rate proceeding (GCR filing). In our prior opinion, however, we rejected this argument because of the limited nature of GCR filing procedures. *See Equitable* at 249, 526 A.2d at 830-31.

[7] Brief for Equitable Gas Company at 26.

In any vagueness challenge, the critical inquiry is whether the challenged legislation either requires or forbids certain conduct in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application. *Conally v. General Construction Co.*, 269 U.S. 385 (1926). In this regard, our Pennsylvania Supreme Court has stated: "Statutes which are challenged on the ground of vagueness are not, however, to be tested against paradigms of legislative draftsmanship. . . . Rather, the requirements of due process are satisfied if the statute in question contains *reasonable* standards to guide the prospective conduct." *Commonwealth v. Heinbaugh*, 467 Pa. 1, 6, 354 A.2d 244, 246 (1976).

The focal requirement at issue in this appeal is Equitable's statutory duty to pursue a least cost procurement policy consistent with the utility's obligation to provide safe, adequate and reliable service to its customers. In furtherance of this statutory mandate, Section 1317 of the Code, 66 Pa. C. S. §1317, requires the utility to provide detailed information with respect to their participation in federal (FERC) rate proceedings, contract negotiation or renegotiation with gas suppliers, their efforts to secure lower cost gas supplies both within and outside the Commonwealth, and any sources or amounts which have been withheld or caused to be withheld from the market by the utility. The associated PUC regulations provide detailed instructions to the utility for compliance with their reporting obligations. *See* 52 Pa. Code §§53.61-53.68.

Moreover, Section 1318 of the Code, 66 Pa. C. S. §1318, which focuses on the determination of just and reasonable gas rates, requires the Commission to make specific findings not limited to, but including findings that:

(1) The utility has fully and vigorously represented the interests of its ratepayers in proceedings before the Federal Energy Regulatory Commission.

(2) The utility has taken all prudent steps necessary to negotiate favorable gas supply contracts and to relieve the utility from terms in existing contracts with its gas suppliers which are or may be adverse to the interests of the utility's ratepayers.

(3) The utility has taken all prudent steps necessary to obtain lower cost gas supplies on both short-term and long-term bases both within and outside the Commonwealth, including the use of gas transportation arrangements with pipelines and other distribution companies.

(4) The utility has not withheld from the market or caused to be withheld from the market any gas supplies which should have been utilized as part of a least cost fuel procurement policy.

This Section also requires the Commission to make specifically detailed findings where a utility purchases gas from an affiliate.

After review of these statutory requirements and regulations, we are of the opinion that Equitable has not been denied due process of law for lack of reasonably ascertainable standards. Whether or not the utility has conformed to its statutory duties in a reasonable manner will, of course, depend on the individual circumstances and facts of each particular Section 1307(f) filing. However, we are satisfied that Sections 1317 and 1318 of the Code and the associated regulations are clear and unambiguous and provide sufficient guidance for the utility to comply with its obligations to rate payers.

The order of the PUC is affirmed.

80

## ORDER

AND NOW, January 26, 1988, the order of the Public Utility Commission in the above-captioned matter is affirmed.