**Irwin A. POPOWSKY, Consumer Advocate, Petitioner,**

v.

**PENNSYLVANIA PUBLIC UTILITY COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued April 15, 1996.
Decided May 13, 1996.
As Amended May 21, 1996

Linda C. Smith, Assistant Consumer Advocate, for Petitioner.

Kevin J. Moody, for Respondent.

Before DOYLE and McGINLEY, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

Irwin A. Popowsky, Consumer Advocate/Office of Consumer Advocate (OCA) appeals from the order of the Pennsylvania Public Utility Commission (PUC) that adopted the recommendations of the Administrative Law Judge (ALJ) accepting Columbia Gas of Pennsylvania, Inc.'s (Columbia)

proposal to implement a gas cost incentive program. We affirm.

On April 1, 1994, Columbia filed Supplement No. 120 to Tariff Gas—Pa. P.U.C. No. 8 proposing increases in rates for the recovery of purchased gas costs pursuant to Section 1307(f) of the Public Utility Code, 66 Pa.C.S. § 1307(f) (Code).[1] Columbia's Supplement No. 120 filing proposed two performance-based incentive (PBI) programs in response to the restructuring of pipeline services under the Federal Energy Regulatory Commission (FERC) Order 636 which *inter alia,* required the unbundling of interstate pipeline services and eliminated the pipeline's merchant services. The two PBI programs proposed by Columbia were: (1) a capacity release revenue sharing program[2] and (2) a gas cost incentive program. Columbia entered into a stipulation with the Office of Trial Staff (OTS) setting forth the specifics of these programs.[3] The stipulation provided that the gas cost incentive program was a three-year pilot, applicable only to spot market purchases made by Columbia from April through October. These spot market purchases were compared to the NYMEX average, *see* n. 3, whereby if Columbia purchased the gas at less than the adjusted index price, Columbia would receive a percent of the savings as would its customers.[4]

The ALJ approved the OTS and Columbia's stipulation stating:

[the] recommendation on these issues which are disputed by OCA is that the stipulation between Columbia and OTS be adopted. This stipulation provides for a trial period and results can be subjected to intense scrutiny. It will be a relatively easy matter to compare Columbia's results with incentives to what would have been

1. The proposed tariff rates were to be in effect from October 1, 1994 through September 30, 1995.

2. The components of the capacity release revenue sharing program are not before this Court on appeal.

3. The stipulation provided that the index would be the average New York Mercantile Exchange (NYMEX) closing price for the last three trading days of the month prior to the month in which

purchases will be made, as adjusted for location differentials by the average of prices reported by three publications at the specific locations where Columbia purchases gas. (270a.)

4. The capacity release incentive program was a one-year pilot where if Columbia was able to achieve greater than a $1,042,650 capacity release revenue target, Columbia would retain 50% and pass through to the ratepayers 50% of the incremental revenues received from the capacity release.

without them. Certainly this is a brand new area for regulations and innovations should be encouraged. The fact that Columbia has been better than average in the past indicates that its management is sensitive to incentives and will respond appropriately.

(281a.)

The OCA filed exceptions stating that the gas cost incentive program was authorized by neither Section 1307(f)(5) of the Code nor Section 1318 of the Code, 66 Pa.C.S. § 1318 and was inconsistent with a least cost fuel procurement policy because it failed to adequately balance risk and reward to Columbia and its ratepayers. (328a–347a.) Columbia replied to the exceptions noting that the OCA had not argued before the ALJ that Section 1307(f)(5) of the Code provided a total bar to the PUC's adoption of the gas cost incentive program.

Upon consideration of the ALJ's recommendation, OCA's exceptions and the replies thereto, the PUC made the following determination:

> [W]e concur with Columbia and the OTS that the ALJ correctly found that the Public Utility Code does not prohibit [gas cost incentive] programs such as the one contained in the Stipulation in this proceeding. However, we do further find, ... that the stipulated incentive program must be modified to cure defects concerning such matters as the balancing of risks and rewards, penalties, and deadband which should be applied.

PUC opinion at 27.

The PUC then set forth the gas cost incentive mechanism which it believed provided an appropriate balance between risk and reward as follows:

Range of Actual Spot Prices vs. Adjusted NYMEX Benchmark

| 98% to 102% | Deadband: | No rewards or penalties |
|---|---|---|
| | Rewards — | Penalties |
| below 98% or above 102% | 50% shareholders / | 50% ratepayers |
| | 50% shareholders / | 50% ratepayers |

We find that this deadband of 98%–102%, together with the 50% sharing of rewards and penalties, produces the best balancing of risk and rewards, while at the same time requiring Columbia to achieve a level of performance which is above average before receiving any reward.

Id. at 30. By order entered September 30, 1994, the PUC adopted the stipulation between OTS and Columbia as modified and gave Columbia the option to accept or reject the PUC's modifications to the stipulated capacity release revenue sharing program and the gas cost incentive program.

The OCA filed for a reconsideration on three issues: (1) the propriety of granting Columbia the option to accept or reject the modifications to the stipulated PBI programs; (2) the propriety of allowing Columbia to implement any capacity release reve-nue sharing programs; and (3) the PUC's legal authority to approve any PBI program.

Columbia rejected the PUC's modifications to the capacity release revenue sharing program and accepted the PUC's modification to the gas cost incentive program. The PUC eventually denied OCA's reconsideration petition concluding that Sections 1301,[5] 1307(f), 1317[6] and 1318 of the Code and the PUC's wide range of discretion recognized in *Equitable Gas Co. v. Pennsylvania Public Utility Commission*, 113 Pa.Cmwlth. 68, 536 A.2d 846 (1988), provided express statutory au-

**5.** 66 Pa.C.S. § 1301.

**6.** 66 Pa.C.S. § 1317.

thority for the PUC's approval of the modified stipulated gas cost incentive program.

■ On appeal to this Court,[7] OCA argues that the PUC erred as a matter of law in approving the gas incentive program because Section 1307(f)(5) of the Code only allows the gas utility to retain the actual gas expense incurred whereas the program allowed Columbia in certain situations to retain more than the actual gas expense incurred. The OCA also argues that the PUC abused its discretion when it granted Columbia the option to accept or reject the PUC's modifications to the stipulated programs.[8]

Section 1307(f) of the Code allows a large natural gas local distributing company (LDC) such as Columbia to recover its gas expenses prudently incurred, consistent with the standards of Section 1318 of the Code. Section 1318 of the Code provides, in pertinent part, as follows:

> In establishing just and reasonable rates for those natural gas distributing utilities with gross intrastate operating revenues in excess of $40,000,000 under section 1307(f) (relating to sliding scale of rates; adjustments) or 1308(d) (relating to voluntary changes in rates) or any other rate proceeding, the commission shall consider the materials provided by the utilities pursuant to section 1317 (relating to regulation of natural gas costs). No rates for a natural gas distribution utility shall be deemed just and reasonable unless the commission finds that the utility is pursuing a least cost fuel procurement policy, consistent with the utility's obligation to provide safe, adequate and reliable service to its customers.

66 Pa.C.S. § 1318(a). An LDC recovering gas costs under Section 1307(f) of the Code is required to submit information concerning "[t]he utility's efforts to secure lower cost gas supplies both within and outside of the Com-

monwealth, including the use of transportation arrangements with pipelines and other gas distribution companies." 66 Pa.C.S. § 1317(a)(3). The PUC, thus, must consider the information submitted pursuant to Section 1317 of the Code when determining whether an LDC is pursuing a least cost fuel procurement program, consistent with its obligation to provide safe, adequate and reliable services to customers.

An LDC seeking recovery of the gas costs under Section 1307(f) of the Code is required, *inter alia*, to file a statement with the PUC specifying for the prior 12–month period:

> (i) The total gas revenues received pursuant to this section.
>
> (ii) The total gas expense incurred.
>
> (iii) The difference between the amounts specified by subparagraphs (i) and (ii).
>
> (iv) Evidence explaining how actual costs incurred differ from the costs allowed under paragraph (2) [1307(f)(2)] and why such differences occurred.
>
> (v) How these costs are consistent with a least cost procurement policy as required by section 1318 (relating to determination of just and reasonable natural gas rates).

66 Pa.C.S. § 1307(f)(3). After hearing, the PUC must:

> determine the portion of the companies' actual gas costs in the previous 12–month period which meet the standards set out in section 1318. The commission shall, by order, direct each gas utility subject to this subsection to refund to its patrons any gas revenues collected pursuant to paragraph (2) which exceed the amount of actual gas expenses incurred consistent with the standards in section 1318 and to recover from its patrons any amount by which the actual gas expenses, which have been incurred consistent with the standards in section

---

7. Our scope of review is limited to a determination of whether constitutional rights were violated, an error of law was committed or whether necessary findings of fact are supported by substantial competent evidence. 2 Pa.C.S. § 704. Were this court only considering the denial of reconsideration, our scope of review would be more limited.

8. The PUC argues that OCA's challenge to the gas cost incentive program is speculative and not ripe for review. However, because all such programs are somewhat speculative we believe the challenges should be brought forth prior to their implementation to avoid unnecessary litigation in the future.

1318, exceed the revenues collected pursuant to paragraph (2).

66 Pa.C.S. § 1307(f)(5).

■ Because "actual gas costs" or "actual gas expenses" are not specifically defined in Section 1307(f)(5), we must defer to the PUC's interpretation that "actual gas costs" and "actual gas expenses" referenced in Section 1307(f)(5) are determined with respect to whether such costs are incurred pursuant to a least cost fuel procurement policy. "When statutory language is not explicit, a court may defer to an administrative agency's interpretation in order to ascertain legislative intent." *National Fuel Gas Distribution v. Pennsylvania Public Utility Commission,* 137 Pa.Cmwlth. 621, 587 A.2d 54, 62 (1991).

Section 1318 of the Code also provides the PUC with the flexibility and discretion to evaluate an LDC's least cost fuel procurement policy under the conditions of the existing gas marketplace. The record demonstrates that the gas marketplace existing after FERC Order 636 is different from the marketplace that existed prior to FERC Order 636. (*See* 14a–17a.)

The record demonstrates that Columbia was required to: 1) make organizational changes to implement the new supply and operating responsibilities; and 2) obtain additional equipment and facilities set forth in the FERC Order 636. The PUC held that Section 1318 provided sufficient latitude to allow an LDC to develop its least cost fuel procurement policy in the context of the existing marketplace. We have held that the PUC has discretion under the Code to make adjustments under Sections 1307(f)(5) and 1318 to an LDC's "actual" cost made by setting the rates based upon gas purchases that were not actually made, but should have been. *Equitable Gas Co. v. Pennsylvania Public Utility Commission,* 113 Pa.Cmwlth. 68, 536 A.2d 846 (1988). We have also held that the PUC has discretion under Sections 1307(f)(5) and 1318 to set rates based upon adjustments to an LDC's "projected" costs. *Equitable Gas Co. v. Pennsylvania Public Utility Commission,* 106 Pa.Cmwlth. 240, 526 A.2d 823 (1987).

OCA's reliance on our decision in *Pennsylvania Industrial Energy Coalition v. Penn-* *sylvania Public Utility Commission,* 653 A.2d 1336 (Pa.Cmwlth.1995), *affd.* —— Pa. ——, 670 A.2d 1152 (1996), in support of its statutory authority argument is misplaced because rates determined in Section 1307(f) proceedings are no less just and reasonable than rates established in Section 1308(d) proceedings. Therefore, we hold that the PUC did not err as a matter of law in affirming the gas purchase incentive program set forth by Columbia.

■ Next, OCA argues that the PUC abused its discretion when it granted Columbia the option to accept or reject the incentive rate making method. OCA asserts that the PUC conferred legislative power upon Columbia contrary to law. *See Munn v. Illinois,* 94 U.S. 113, 24 L.Ed. 77 (1876). We do not agree.

The PUC gave Columbia the option to accept or reject modifications to both the capacity release program and the gas cost incentive program within twenty days of the entry of the order. Columbia accepted the modifications to the gas cost incentive program, but rejected the modifications to the capacity release program. There is no question that Columbia's PBI programs are new and experimental and designed to respond to the post-FERC Order 636 competitive gas marketplace. Rather than being an impermissible delegation of its regulatory authority, the PUC's grant of an option to Columbia to accept or reject the modifications was in the public interest because: (1) the PBI program is new and experimental and was approved for only a three-year pilot program; (2) only Columbia's business practice is affected by the PUC's modifications; and (3) the PUC modified the stipulated programs, which were conditioned upon acceptance by the PUC without modification. OCA has not been aggrieved by the PUC's grant of the option to Columbia to accept or reject the plan.

Further, allowing voluntary participation in PBI programs is consistent with FERC's approach to incentive regulation. *See Policy Statement on Incentive Regulation,* 61 FERC ¶ 61,168, p. 61,587, 1992 WL 494774 (October 30, 1992) (specific incentive mecha-

nism should be (1) prospective, (2) voluntary, (3) understandable, (4) result in quantified benefits to consumers and (5) demonstrate how it maintains or enhances incentives to improve the quality of service).

OCA argues that *Olin Mathieson Chemical Corp. v. White Cross Stores,* 414 Pa. 95, 199 A.2d 266 (1964) does not authorize the PUC to allow Columbia to reject or accept its changes to the stipulation. However, *Olin Mathieson* involved a state statute that allowed private parties to set prices by contract, binding upon non-parties to the contract. The Supreme Court held that the complete absence of constitutional protections of statutory standards, notice and hearing, and availability of review was lacking. Here, however, the Public Utility Code provides constitutional protections. Section 1318 of the Code provides explicit statutory standards governing the PUC's discretion to determine whether a gas utility is pursuing a least cost fuel procurement policy. The PBI programs were approved only after notice and hearing and with the opportunity for judicial review. Therefore, we hold that the PUC did not abuse its discretion when it granted Columbia the option to accept or reject the incentive rate-making method.

Accordingly, we affirm.

### ORDER

AND NOW, this 13th day of May, 1996, the order of the Pennsylvania Public Utility Commission in the above-captioned matter is hereby affirmed.